IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Ross, Individually, and on behalf of all others similarly situated, | : : | Consolidated Case Nos. 2:05-cv-0819 2:05-cv-0848 2:05-cv-0879 |
| Plaintiff, | : | 2:05-cv-0893 2:05-cv-0913 |
| v. | : | 2:05-cv-0959 |
| Abercrombie & Fitch Company, et al., | : : | JUDGE SARGUS |
| Defendants. | : | |

OPINION AND ORDER

These consolidated securities class actions are before the Court by way of lead plaintiff's motion to compel the production of missing documents (#368 filed in Case No. 2:05-cv-819). Responsive and reply memoranda have been filed.  For the following reasons, the motion will be granted.

I.  Background

The documents at issue are, according to plaintiff, documents that should have been produced in response to plaintiff's first request for production of documents.  Plaintiff claims to have alerted Abercrombie as early as August 4, 2009, about the fact that some of these documents were not included in Abercrombie's response to the first document request.  Additional missing documents were identified in a letter sent on September 11, 2009 and in an email sent eleven days later.  The same list of missing documents which forms the basis of the current motion was provided to Abercrombie following a "meet and confer" which took place on October 22, 2009.  After an exchange of more letters, Abercrombie produced some additional documents on November 19, 2009.  However, plaintiff describes this production

as "woefully inadequate." Motion to compel, Doc. #368, at 9. The parties communicated again about additional documents but on January 13, 2010, Abercrombie indicated that it believed it had done everything necessary to locate additional documents, had not located any, and was therefore not going to produce anything more. The instant motion was filed twelve days later.

II.  The Parties' Positions.

In the initial motion, plaintiff's position is straightforward.  Plaintiff asserts that all of the categories of documents are relevant both from a content point of view - they generally relate to sales performance, gross margins, inventories, and markdowns of various product lines - and from a temporal viewpoint (the class period and other periods reasonably close in time).  In fact, documents from these various categories were produced, but there are gaps in the sequence of those documents.  Plaintiff also notes that, according to Abercrombie's own document retention policy, the monthly, weekly, and financial reports for the entire relevant time frame should have been in existence when Abercrombie initiated its litigation hold in September, 2005, and the daily reports should have been preserved for much of that time frame.  Further, although Abercrombie ultimately used a search protocol that was structured somewhat differently than the way in which the document request was constructed, using keywords to search for relevant documents rather than doing so by the categories specified by plaintiff, Abercrombie represented that its protocol was actually producing more, rather than fewer, documents than would have been produced by a search defined by categories.  Thus, according to plaintiffs, there is simply no reason why Abercrombie should not have produced the missing reports.

In response, Abercrombie takes the position that once it conducted its keyword search of electronically-stored information

and failed to locate the allegedly missing documents, it had no obligation to look further or to use other means for finding them. It argues that these documents, rather than being centrally relevant, are of marginal value to plaintiff's case and that there is no basis for requiring additional and costly searches for them to be made. It also notes that it did not place a litigation hold on its mainframe computer hardware or applications run only on the mainframe, and so advised plaintiff repeatedly, so that to the extent any of these missing documents would fall into that category, they were not preserved and no longer exist.

In reply, plaintiff mostly reiterates the arguments presented in support of the motion. In response to Abercrombie's relevance argument, plaintiff contends that these reports are key to its claim of fraud on the market because they contain material information that was never publicly disclosed to Abercrombie's shareholders, which is the theory upon which plaintiff's claim is based. Plaintiff further points out that the most reasonable interpretation of Abercrombie's response is that these documents no longer exist, since it seems likely that the initial keyword search, and the refinements to that search made after plaintiff raised the issue of missing documents, would have turned up these documents if they were in any of the databases which were searched. Because Abercrombie has represented that they are not within the documents produced to the SEC or the documents culled out by the first keyword search of ESI, they apparently were destroyed. Plaintiff contends that it was unaware initially that many of these documents were produced from information or applications stored on or run on the mainframe computer, and claims that Abercrombie should have extended its litigation hold to these types of documents. Finally, plaintiff asserts that Abercrombie has not met its burden of showing how costly it would

be to search for these additional documents, so that the Court should not credit its cost-benefit defense to further document production.

### III.  The Issues
#### A.  Relevance

Because there is the potential to apply the cost-benefit analysis prescribed by Rule 26(b) to the question raised by the motion to compel, it is helpful first to resolve the conflict in the parties' positions as it relates to the relevance of these missing documents.  For the following reasons, the Court concludes that plaintiff has the better of this argument.

As plaintiff points out, this case (like most fraud on the market cases) involves not just the communications made by the defendant to the investing public, but, especially in a case involving a claim that material information was known but not disclosed, also involves the facts known by corporate insiders that were not so communicated.  Internal corporate documents, such as reports relating to sales, gross margins, inventory, and markdowns can all be used to show that the company knew of material facts which were not necessarily consistent with the public pronouncements being made.  Further, documents generated prior to the class period can be relevant for a number of purposes, including demonstrating that certain indicators, when compared to prior years or quarters, should have been signals to corporate officials that the situation was not as rosy as public announcements, projections, or failures to disclose might have portrayed.  Finally, plaintiff is correct in its argument that such documents may well be relevant to the scienter element of the claim, showing to what extent company officials either were aware of undisclosed issues or acted recklessly in that regard. As a general matter, therefore, the Court finds that the documents in question fall closer to the core of plaintiff's

claims than they do to the outer reaches of relevance.

### B. Burden

Abercrobmie appears to make two related arguments about the burden which would be imposed if the Court were to direct it to search for these documents.  First, it contends that by performing the initial agreed-upon keyword search through the universe of ESI which was identified as potentially containing all, or most, relevant documents, it has already assumed a massive burden in terms of winnowing out responsive documents, performing a privilege review, and producing the responsive and non-privileged documents.  Nonetheless, it shouldered the burden of going through the "hit" documents a second time when the issue of missing reports was raised, and has now produced every such report that was in the group of documents captured by the first keyword search.  Therefore, it reasons, it has been burdened enough and any additional procedures the Court might require to look for these documents would be excessive.  Second, it appears to argue that any additional procedures would themselves be unduly burdensome and not worth the effort under the cost-benefit analysis contained in Rule 26(b)(2)(C)(iii).

The second argument is difficult to evaluate, because Abercrombie has not explained exactly how it might attempt to locate these documents, or, indeed, if there is any hope of finding them if they were not turned up by the initial keyword search of the data sets subjected to that search.  Thus, it has provided no information about how much time or money it might spend looking for them.  The party claiming that discovery is burdensome does have an obligation to make that claim with specificity. See, e.g., Lurensky v. Wellinghoff, 258 F.R.D. 27, 30 (D.D.C. 2009) (party resisting discovery on grounds of undue burden "must show good cause for the proposed limitation of discovery, including specific, articulable facts and not merely

speculative or conclusory statements"). Without such a showing, the Court simply may not preclude discovery on the grounds that to allow it would unduly burden the responding party.

The Court finds Abercrombie's first argument no more compelling. There is nothing in the history of this case to suggest that plaintiff can never make a showing that there are relevant documents contained in data sets other than the ones subjected to the keyword search or in the documents produced to the SEC. True, the plaintiff does face a hurdle in doing so; the initial search and refinements were deemed to be the best way to identify responsive documents, and the data sets they were applied to was created with input from plaintiff (see the Court's Order of October 27, 2008), so that if the Court were to order other types of searches, there would have to be some reasonable probability that the documents being sought would be found by those searches and that they would not add significantly to the burden which discovery has already imposed on Abercrombie. As already noted, however, Abercrombie, not plaintiff, must quantify that burden, especially where, as here, plaintiff's request for additional documents is specific rather than general, and the documents at issue are important. The Court finds that plaintiffs have done enough to justify more searching, assuming that some type of search protocol can be formulated that has a reasonable likelihood of turning up some or all of the missing documents.

### C.  Search Protocol

The problem with the Court's directing Abercrombie to make additional efforts to find these documents is the absence of information about whether they may still exist somewhere, and, if so, the best way to go about finding them. Abercrombie may be suggesting, based upon its many references it its mainframe computer and the absence of a litigation hold on documents

created or run on that computer, that the only place where these documents might be found would have been on the mainframe, but because of the passage of time and the absence of a document hold, they cannot be found there now.  It also may be suggesting that there are no other places beyond the files and hard drives subjected to the initial keyword search where such documents might have been maintained, so that because that search, which contained the types of terms designed to "hit" these documents, and the subsequent search done in 2009 once the issue of missing documents was raised, did not unearth them, there are no other places to look.  However, Abercrombie has also argued that additional searches would be burdensome, an argument which leads the Court to believe that there may be other ways in which Abercrombie can attempt to find the documents.  The Court simply cannot determine from the current state of the record whether that is so.

In order to resolve this dilemma, the Court will instruct the parties to meet and confer about this specific issue.  To the extent that Abercrombie does believe that the documents may still exist, it shall, at the parties' conference, tell plaintiff's counsel how it would be possible to do a search for them, and how much, in terms of both time and money, such a search might cost.  The parties are encouraged to work out the details of such a search, keeping in mind that Abercrombie has already had one chance to tell the Court that any possible additional searches would, in and of themselves, be particularly burdensome to undertake, but did not do so.  If this process does not produce an agreement, the parties shall contact the Court to arrange for a telephone conference at which the issue can be discussed further.

### IV.  Disposition and Order

For the foregoing reasons, lead plaintiff's motion to compel

the production of missing documents (#368 filed in Case No. 2:05-cv-819) is granted.  The parties shall, within a reasonable time, confer as described in Section III(C) of this Opinion and Order, and may contact the Court for a telephone conference if the issues raised by the motion are not resolved at the parties' conference.

### V. Appeal Procedure

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge

-8-